UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL REESE,
    *Plaintiff*,

v.

JOSEPH V. BRETON, *et al.*,
    *Defendants.*

No. 3:18-cv-1465 (VAB)

# INIITAL REVIEW ORDER

Michael Reese ("Plaintiff"), currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, filed this Complaint *pro se* under 42 U.S.C. § 1983. Mr. Reese's complaint was received on August 29, 2018, Compl., ECF No. 1 (Aug. 29, 2018); and his motion to proceed *in forma pauperis* was granted on September 5, 2018, Order, ECF No. 6 (Sept. 5, 2018).

Mr. Reese alleges that Dr. Joseph V. Breton, Dr. Cary Robert Freston, the University of Connecticut Health Center Correctional Managed Health Care, Nurse Barbara LaFrance, Dr. Mohammed Memon, Dr. Raymond A. Castro, Dr. Ryu Yoshida, Dr. Augustur D. Massocca, Dr. Douglas W. Gibson, and Dr. Rafael Pacheco, were deliberately indifferent to his medical needs, and violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a). He also asserts state law claims for medical malpractice, negligence, and violation of Conn. Gen. Stat. Section 4a-60.

Following a review of Mr. Reeese's claims under 28 U.S.C. § 1915A(b), his federal claims are **DISMISSED**, but he may file an amended complaint by **April 3, 2020.**

    **I.**    **FACTUAL ALLEGATIONS**

On February 25, 2015, Mr. Reese allegedly injured his knee. Compl. at 10. Correctional staff allegedly told him to submit a sick call request. Mr. Reese allegedly did so the following day. On March 9, 2015, Mr. Reese allegedly submitted an emergency grievance on a request form complaining that he had not been seen. *Id.* He allegedly was told that he had used the wrong form and that the medical unit would evaluate his complaint.

On March 12, 2015, Mr. Reese allegedly submitted a second grievance. *Id.* The response allegedly indicated that he had no request on file and that "Medical can evaluate." *Id.* On March 13, 2015, Mr. Reese allegedly again wrote to the medical unit. *Id.* The response allegedly indicated that he had been instructed regarding emergency sick call protocol and that he has been seen on April 7, 2015. *Id.* On March 31, 2015, Mr. Reese allegedly submitted a level 2 grievance and was told that he had exhausted his remedies. *Id.*

On April 1, 2015, Mr. Reese allegedly requested to be seen at sick call. *Id.* Correctional Officer Rodriguez allegedly delivered the request in person. *Id.* Mr. Reese allegedly was seen at sick call and put on the list to see the doctor. *Id.* On August 6, 2015, Mr. Reese allegedly underwent an MRI and was approved for a surgical consult. *Id.*

Mr. Reese allegedly underwent knee surgery on October 28, 2015. *Id.* Dr. Freston allegedly permitted weight bearing as tolerated and instructed Mr. Reese to perform calf raises and leg lifts. *Id.* On November 5, 2015, Mr. Reese allegedly wrote to medical staff for instructions on how to do the knee exercises. *Id.* He allegedly wrote again on November 9, 2015. He allegedly had follow-up appointments with orthopedics and pain management. *Id.*

Mr. Reese allegedly submitted requests about pain management on November 23, 2015, and December 7, 2015. *Id.* On December 8, 2015, Mr. Reese allegedly submitted a request about

physical training and pain management. *Id.* In response to the December 8, 2015 request, he allegedly was told that there would be no physical training. *Id.* On December 22, 2015, Mr. Reese allegedly received a response to his grievance about pain management, stating, "We fixed it." *Id.*

On March 4, 2016, Mr. Reese allegedly requested an adjustment to his medication. *Id.* at 11. On June 3, 2016, he allegedly filed a medical habeas action. *Id.* On July 24, 2016 or September 1, 2016, Mr. Reese allegedly was seen by a doctor. *Id.* On November 5, 2016, Mr. Reese allegedly submitted a request complaining that the pain was spreading and his leg was "giving out." *Id.*

Ten months later, on September 5, 2017, Mr. Reese allegedly filed a grievance complaining that nothing had been done. *Id.* On September 15, 2017, Mr. Reese allegedly filed a grievance questioning why additional surgery was not being performed. *Id.* In response to the first grievance, a doctor allegedly examined Mr. Reese on September 18, 2017, and ordered an orthopedic consultation. *Id.* The second grievance allegedly was returned without disposition. *Id.*

On December 4, 2017, Mr. Reese allegedly went to the University of Connecticut Health Center, where a doctor allegedly gave him a steroid injection. *Id.* The doctor allegedly ordered physical training and a second injection. *Id.* On December 11, 2017, Mr. Reese allegedly received a response to his grievance relating to the MRI. *Id.* The response allegedly stated that Mr. Reese needed a new knee but was too young. *Id.* Mr. Reese allegedly submitted a level 2 grievance, although allegedly this was not the proper way to appeal a decision of the Utilization Review Committee. *Id.*

On January 21, 2018, Mr. Reese allegedly submitted a request asking when he would

return to the University of Connecticut Health Center and when he would receive the second steroid injection. *Id.* The doctor allegedly indicated that he was appealing the Utilization Review Committee decision and that Mr. Reese would be seen at his follow-up visit. *Id.* At that visit, the second injection allegedly was ordered. *Id.* Mr. Reese allegedly will be seen to discuss physical therapy. *Id.*

II.     **STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and

4

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III. DISCUSSION

#### A. The Deliberate Indifference to Medical Needs Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton infliction of pain," *Chance*, 143 at 702 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Although the Constitution does not require "comfortable" prison conditions, the Eighth

Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

The Supreme Court and the Second Circuit have held that deliberate indifference by prison officials to a prisoner's serious medical or dental needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance*, 143 F.3d at 702. To state a section 1983 claim for deliberate indifference to a serious medical or dental need, a plaintiff must meet a two-pronged test, requiring an analysis of the claim both objectively and subjectively.

Under the objective prong, the inmate's medical or dental need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical or dental condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citations omitted).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in the original) (internal quotation marks and citations omitted).

It is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* (citations omitted). "For example, the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Id.* (citing *Chance*, 143 F.3d at 702).

Under the subjective prong, the action or inaction of a prison official, medical staff member, or dental provider must have constituted recklessness. *See Salahuddin v Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). He must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *Id.* at 280. Mere negligent conduct does not constitute deliberate indifference. *See id.* ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (stating that medical malpractice alone does not amount to deliberate indifference).

Mr. Reese generally alleges that the defendants were deliberately indifferent to his serious medical needs. Mr. Reese complained of pain over the course of a three-year period and alleges that Defendants knew of his condition and did nothing. Mr. Reese, however, fails to indicate what actions each defendant took, or failed to take, that violated his constitutional rights.

The Court construes Mr. Reese's Complaint as bringing an Eighth Amendment claim because of the delay or interruption of his medical treatment. His allegations, however, are insufficient for determining whether Mr. Reese suffers from a serious medical need.

Accordingly, Mr. Reese is directed to file an amended complaint that includes factual

allegations indicating what actions each defendant took, or failed to take, that violated his constitutional rights and indicating that his medical condition was objectively serious.

### B. The Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) Claims

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). Both statutes are intended to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

To state an ADA claim, a plaintiff must allege facts showing that he is a qualified individual with a disability, that he was excluded from or denied benefits of a service, program or activity, or otherwise discriminated against, and that the denial or discrimination was due to his disability. *Phelan v. Thomas*, 439 F. App'x 48, 50 (2d Cir. 2011) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking. *See* 42 U.S.C. § 12102(2)(A). The

determination of whether an individual is disabled should be made without considering ameliorative effects of medication or assistive devices. *See* 42 U.S.C. § 12102(4)(E). When analyzing these claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and internal quotation marks omitted); *see Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir. 1998) ("Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled.").

Mr. Reese alleges that the defendants violated his rights under these two statutes because they denied him physical therapy and failed to treat a medical condition allegedly resulting from faulty surgery. Mr. Reese's allegations—that his condition affected his ability to walk, Compl. at 11—are insufficient for the Court to determine whether this condition merely affects or substantially limits Mr. Reese's ability to walk. For purposes of this review only, the Court assumes that the plaintiff has a qualifying disability.

Neither the ADA nor the RA, however, applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Correctional Servs.*, No. 08 Civ. 301 (LTS), 2010 WL 2899751, at *2-3 (S.D.N.Y. July 21, 2010) (citing *Pfrommer*, 148 F.3d at 82); *Atkins v. Cty. of Orange*, 251 F. Supp. 3d 1225, 1232 (S.D.N.Y. 2003). Courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010); *see Lincoln CERCPAC v.*

9

*Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided."). These claims are considered under the Eighth Amendment for sentenced inmates or the Fourteenth Amendment for pretrial detainees. *See Elbert*, 751 F. Supp. 2d at 595.

Mr. Reese alleges a denial of proper medical care, but alleges no facts suggesting that he was treated differently because of his disability. As Mr. Reese has not shown that he was discriminated against because of his disability, his ADA and RA claims are dismissed under 28 U.S.C. § 1915A(b)(1).

### C. The Claims Against The University of Connecticut Health Center Correctional Managed Health Care

Section 1983 requires that each defendant be a person acting under color of state law. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom or usage of any State … subjects or caused to be subjected ….").

Correctional Managed Health Care, a division of the University of Connecticut Health Center, deals with prisoner health needs. Neither a state agency nor any subdivision thereof is considered a person within the meaning of section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (Eleventh Amendment immunity extends to "government entities that are considered 'arms of the State'"); *see also Ferla v. Correctional Managed Health Care*, No. 3:15-cv-1303(MPS), 2015 WL 5826812, at *12 (D. Conn. Oct. 2, 2015) (holding that Correctional Managed Health Care, a division of state agency University of Connecticut Health Care, is not a person subject to suit under section 1983).

Accordingly, all claims against University of Connecticut Health Center Correctional Managed Health Care are dismissed under 28 U.S.C. § 1915A(b)(1).

### D. Connecticut General Statutes § 4a-60

Conn. Gen. Stat. § 4a-60, entitled "Nondiscrimination and affirmative action provisions in awarding agency, municipal public works and quasi-public agency project contracts," describes the mandatory provisions of these public contracts and establishes contract compliance requirements.

While Mr. Reese seeks relief under this statutory provision, he does not allege having a contract with the Department of Correction. As a result, this provision does not apply to him.

Accordingly, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

The ADA and RA claims, all claims against the University of Connecticut Health Center Correctional Managed Health Care, and the state law claim for violation of Conn. Gen. Stat. § 4a-60 are all **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

Mr. Reese is directed to file an amended complaint by **April 3, 2020** in compliance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and include factual allegations indicating what actions each defendant took or failed to take that violated his constitutional rights as well as facts showing that he has a serious medical need.

Failure to file an amended complaint complying with this Order will result in the dismissal of the deliberate indifference claim.

The Court will consider whether to take supplemental jurisdiction over the state law medical malpractice and negligence claims after it determines the viability of the deliberate indifference claim.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of March, 2020.

/s/
Victor A. Bolden
United States District Judge